## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **JAMES C. HARRIS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 14-3032** |
| | ) | |
| **CECIL POLLEY, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

In January 2014, Petitioner James C. Harris filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (d/e 1). On May 1, 2014, Respondent Cecil Polley, the warden of Graham Correctional Center, filed a Motion to Dismiss Petitioner's Petition for a Writ of Habeas Corpus as Untimely (d/e 8). Also pending are Petitioner's Motions for a Stay (d/e 11, d/e 15). The Petition, filed nearly 15 years after Petitioner's conviction, is untimely. Therefore, the Motion to Dismiss is GRANTED and the Motions for a Stay are DENIED.

# I. BACKGROUND

On January 22, 1999, Petitioner pleaded guilty to one count of first degree murder. In exchange for his plea, the State moved to dismiss the remaining counts and agreed to a maximum prison term of 30 years. The State provided the following factual basis for Petitioner's plea. <u>See</u> Transcript, Mot. to Dismiss, Exhibit P (d/e 8-4, pp. 28, 34-37); <u>see</u> <u>also</u> <u>People v. Harris</u>, Nos. 4-10-0784, 4-11-0530 2012 WL 7009682 (Ill. App. Ct. Aug. 13, 2012) (Exhibit L (d/e 8-3, p. 28)).

On August 6, 1998 at around 5:15 a.m., a woman noticed a body in the roadway on Perkins Court and flagged down Detective Tim Cunningham of the Springfield Police Department. The body was identified as that of Cory Miller. Detective Cunningham and Detective Pat Ross interviewed witnesses, including Petitioner and Robert Davis. Petitioner and Davis initially told the detectives that they were riding around with Miller when they noticed two armed men wearing masks walking toward the vehicle.[1] Petitioner and

---

[1] Petitioner told the police that Davis stopped the car on Brown Street. Petitioner and Davis got out of the car and were talking when a silver-gray two-door vehicle drove by and turned on the street going toward South Grand. The car stopped, and two armed men wearing ski masks ran up to them. Petitioner

Davis attempted to wake up Miller, but Miller would not awaken. Petitioner and Davis fled. Later, Davis changed his story to one consistent with the statements given by Jerrod Hammond and Ronald McClain. Each of them said that in the early evening hours of August 6, 1998, Petitioner, who was armed, went looking for Cory Miller. He went to the home of Lukisha McClain and the home of Laquana[2] Miller. Laquana allowed Petitioner and Davis into the home. They woke up Miller, who left with them willingly. The five men drove around for a short while. Petitioner, who was seated in the front passenger seat, turned and, without provocation, shot Miller multiple times. Petitioner and McClain dragged the body out of the vehicle and left the body in the roadway where Miller was found. Petitioner instructed Davis and McClain to burn the vehicle, which they did. Petitioner disposed of the gun in a sewer at the intersection of Normandy and Stevenson.

When asked if the factual basis was correct and whether that is what happened, Petitioner stated, "No, sir, that ain't right." Transcript, Mot. to Dismiss, Exhibit P (d/e 804, pp. 10). However,

---

and Davis ran away. <u>See</u> Statement, Mot. to Dismiss, Exhibit D (d/e 8-1, p. 97).

[2] In the record, her name is occasionally spelled "Laquanna."

Petitioner agreed that that was what the State's evidence would be. Id. at 11. The trial court accepted Petitioner's plea.

On April 12, 1999, the trial court sentenced Petitioner to 27 years' imprisonment. At sentencing, Petitioner apologized to the families and stated, "I know what I did. I accepted my fate. I mean I accept the consequences for what I did." Mot. to Dismiss, Exhibit H (d/e 8-2, p. 74); see also d/e 8-2, p. 75 (wherein Petitioner states that he knows what he did was wrong and that he "pled guilty to accept the fact that what I did was wrong"). Petitioner did not file a direct appeal.

A. Trial Court Denied Petitioner's First Post-Conviction Petition

On April 3, 2002[3], Petitioner filed a Pro Se Post-Conviction Petition pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 to 122-8 (West 2002)). See Mot. to Dismiss, Exhibit B (d/e 8-1). Petitioner raised issues regarding his competency to plead,

---

[3] For the dates of filing, the Court gives Petitioner the benefit of the doubt and uses Petitioner's proof of service mailing date, if one was provided, or Petitioner's signing date, if no proof of service accompanies the filing, even if Petitioner did not strictly comply with Rule 3 of the Rules Governing Section 2254 Cases. See Rule 3 of the Rules Governing Section 2254 Cases in the United States District Court (providing that the § 2254 petition filed by an inmate is timely if deposited in the institution's internal mailing system on or before the last day for filing, which may be shown by a declaration in compliance with 25 U.S.C. § 1746 or by a notarized statement, either of which contains the date of deposit and indicate that first-class postage has been paid). If Petitioner provided neither of those two dates, the Court uses the circuit clerk's file-stamped date.

the sufficiency of the indictments, and whether counsel provided ineffective assistance by failing to conduct any meaningful adversarial testing of the sufficiency of the indictment.

On June 27, 2002, the trial court found the issues waived because Petitioner could have raised them on direct appeal but did not do so.  Mot. to Dismiss, Exhibit C (d/e 8-1).  Petitioner did not appeal the dismissal of his post-conviction petition.

B.   <u>Trial Court Denied Petitioner's Second Post-Conviction Petition as a Successive Petition for Which Petitioner Did Not Seek Leave To File</u>

On May 2, 2006, Petitioner filed his second Petition for Post-Conviction Relief in Sangamon County circuit court.  Mot. to Dismiss, Exhibit D (d/e 8-1).  Petitioner asserted that the detectives falsified documents, committed perjury, and subjected Petitioner to false arrest by fabricating Hammonds' statement.

Petitioner also argued that counsel was ineffective for: failing to talk to Hammonds, despite Petitioner instructing counsel to do so; failing to construct a viable defense; failing to investigate Davis's inconsistent statements; failing to discover that the detectives embellished Laquana Miller's accounts of what occurred; giving false advice about Petitioner's amended indictment; failing to

present a defense to the "illegal arrest warrant complaint"; and failing to investigate misconduct involving McClain where McClain was threatened, coerced, and given false information. Finally, Petitioner argued the trial court failed to comply with Supreme Court Rule 402 (c) and (d). Ill. S. Ct. R. 402(c) (requiring the court to determine there is a factual basis for the plea); Ill. S. Ct. R. 402(d) (addressing plea discussions and agreements).

Petitioner supported these claims with, among other documents, a letter from McClain and an affidavit. <u>See</u> Mot. to Dismiss, Exhibit D (d/e 8-1, pp. 82, 105), In the affidavit, dated March 24, 2004, McClain stated that the detectives told him he would be charged with murder if he did not cooperate and that McClain's sister's life was in danger. McClain stated that he made up the story about how Petitioner murdered Miller but that he never witnessed any murder. McClain asserted that he was riding around with Petitioner, Robert McClain[4], and Hammonds until he and Hammonds were dropped off. McClain stated he lied because he

---

[4] It is not clear if Ronald McClain meant to refer to Robert Davis instead of Robert McClain. Ronald McClain's April 23, 2009 Affidavit stated that he was riding around with Robert Davis, Petitioner, and Hammonds.

did not want his sister to get hurt by Petitioner's brother and so he (McClain) would not go to prison.

On August 25, 2008, the trial court dismissed the petition. Mot. to Dismiss, Exhibit E (d/e 8-2, p. 1). The court found that the petition was a successive post-conviction petition for which Petitioner had not sought leave to file. See 725 ILCS 5/122-1(f) (enacted with an effective date of January 1, 2004 and providing that only one post-conviction petition may be filed without leave of court); P.A. 93-493, § 5, eff. Jan. 1, 2004. Petitioner appealed the dismissal of his second post-conviction petition. However, in August 2009, the appellate court granted Petitioner's motion to dismiss the appeal. Mot. to Dismiss, Exhibit F (d/e 8-2, p. 2).

C.    Trial Court Denied Petitioner's Motion for Leave To File Successive (Third) Post-Conviction Petition

On May 29, 2008, while the second post-conviction petition was pending, Petitioner filed a Motion for Leave of Court to File a Successive Post-Conviction Petition for Post-Conviction Relief. Mot. to Dismiss, Exhibit G (d/e 8-2, p. 3). In support of his assertion that leave should be granted, Petitioner argued that the ruling on

his initial post-conviction petition was fundamentally unfair and that newly discovered evidence showed he was actually innocent.

In support of his actual innocence claim, Petitioner pointed to several documents, including McClain's October 22, 2002 affidavit stating that he, McClain, was coerced into identifying Petitioner as the individual who murdered Miller.  See Mot. to Dismiss, Exhibit G (d/e 8-2, p. 8).  Petitioner also attached McClain's March 24, 2004 affidavit, described above, asserting that detectives coerced McClain into identifying Petitioner as the shooter.

In the Motion, Petitioner stated that he wrote to Hammonds in 2004.  Petitioner asserted Hammonds "echoed the following excerpt: 'What they told you fam. [sic] was some bullsh*t.  I never went in front of no judge and gave no statements.'" Mot. to Dismiss, Exhibit G (d/e 8-2, p. 5).  However, Petitioner did not attach any documents from Hammonds to the Motion.

On May 18, 2009, Petitioner filed a Supplement to his motion for leave.  Mot. to Dismiss, Exhibit H (d/e 8-2, p. 18).  In the Supplement, Petitioner stated that he had heard rumors in the Sangamon County Jail (where Petitioner was held prior to pleading guilty) that McClain was lied to and threatened.  Petitioner

instructed his counsel to meet with McClain, but counsel did not do so. Id. at p. 21.

Petitioner attached to the Supplement an April 23, 2009 affidavit from Ronald McClain in which McClain stated that he rode around with Davis, Petitioner, and Hammond until he and Hammond were dropped off. See McClain April 23, 2009 Affidavit, Mot. to Dismiss, Exhibit H (d/e 8-2, p. 48). McClain denied witnessing the murder and stated he told the detective that Petitioner committed the murder because the detective told McClain he could be charged with murder and that McClain's sister's life was in danger.

Petitioner also argued that his counsel failed to investigate the prosecutor's failure to disclose exculpatory evidence. The exculpatory evidence included the Laquana Miller statement to police in which she stated she could not identify the individuals who retrieved Cory Miller on the night of his murder, contrary to a detective's later report indicating that Laquana identified Harris. The purported exculpatory evidence also included the fact that no written statement from Hammonds existed. Petitioner stated that Hammonds' recent affidavit, which he attached to the Supplement,

indicated Hammonds never told the detective that he witnessed Petitioner kill Miller. <u>See</u> Hammonds' April 18, 2009 Affidavit, Mot. to Dismiss, Exhibit H (d/e 8-2, p. 52) (asserting he had been dropped off by Davis and Petitioner earlier in the evening).

Petitioner further argued that counsel failed to investigate Robert Davis's inconsistent statements. Davis's initial statement was consistent with Petitioner's story about two masked men as compared to his second statement identifying Petitioner as the shooter.

Finally, Petitioner complained that counsel was ineffective for failing to present independent testing and forensic analysis of the alleged murder weapon and investigate the bullet projectiles. The State's forensic scientist found no latent prints on the gun. The forensic scientist also determined that while the four bullets suitable for further comparison were of the same caliber as the gun and were fired from the same gun, the bullets could not be identified or eliminated as having been fired from the gun recovered. <u>See</u> Forensic Reports, Mot. to Dismiss, Exhibit H (d/e 8-2, pp. 59-60).

On September 22, 2010, the trial court found that Petitioner

failed to establish cause for Petitioner's failure to bring the claims

and had not shown the necessary prejudice to allow a successive

petition to be filed.  Mot. to Dismiss, Exhibit I (d/e 8-3, p. 1).

Petitioner appealed, and the appeal was docketed as <u>People v.</u>

<u>Harris</u>, No. 4-10-0784.

D.    <u>Trial Court Denied Petitioner's Section 2-1401 Petition for
      Relief from Judgment as Untimely</u>

On April 5, 2011, while the appeal of the denial of Petitioner's

motion for leave to file his third post-conviction petition was

pending, Petitioner filed a Petition for Relief From Judgment

pursuant to 735 ILCS 5/2-1401.  Mot. to Dismiss, Exhibit J (d/e 8-

3, p. 2).  Petitioner asserted that his motion should be granted

because the State fraudulently concealed evidence that could have

demonstrated Petitioner's actual innocence.  Petitioner argued that

the detectives concealed the fact that Arthur McClain, the guardian

of Jarrod Hammonds, was present when 17-year-old Hammonds

made his statement to the detectives on August 6, 1998.  Arthur

McClain submitted an affidavit indicating that Hammonds did not

identify Petitioner as the shooter.  <u>See</u> Mot. to Dismiss, Exhibit J

(d/e 8-3, p. 8). Petitioner attached both Arthur McClain's affidavit, dated May 17, 2010, and Hammonds' affidavit, dated April 18, 2009 (discussed above). Petitioner also argued that the State concealed the fact that the detectives extracted a coerced statement from Ronald McClain.

On June 8, 2011, the trial court dismissed the motion. Mot. to Dismiss, Exhibit K (d/e 8-3, p. 27). The court found that the motion was not timely filed and that the Petitioner alleged no grounds that would be a basis for relief. Id. Petitioner appealed, and the appeal was docketed as People v. Harris, No. 4-11-0530.

E. The Appellate Court Granted Counsel's Motion to Withdraw and Affirmed the Trial Court

The appellate court consolidated Petitioner's appeal from the dismissal of his motion for leave to file a third post-conviction petition and the dismissal of his motion for relief from judgment under section 2-1401. See People v. Harris, 2012 WL 7009682 (Ill. App. August 13, 2012) (Mot. to Dismiss, Exhibit L (d/e 8-3, p. 28)). The appellate court granted the Office of the State Appellate Defender's motion to withdraw as counsel and affirmed the trial court. On January 30, 3013, the Illinois Supreme Court denied the

Petition for Leave to Appeal.  Mot. to Dismiss, Exhibit M (d/e 8-4, p. 1).

F.  Trial Court Denied Petitioner's November 28, 2012 Motion for Leave to File a Successive Post-Conviction Petition (Fourth)

On November 28, 2012, Petitioner filed a motion for leave to file a successive post-conviction petition.  Petitioner sought leave to file a successive post-conviction petition on the grounds that he had the affidavit of an eyewitness that was previously unknown to him.  Petitioner argued that the affidavit, along with the affidavits of Hammonds and McClain, constitute new evidence that raises the probability that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.

Petitioner attached the affidavit of Kevin Holman.  Mot. to Dismiss, Exhibit N (d/e 8-4, p. 15).  Holman stated that, in October 2011, he was housed at Graham Correctional Center and ran into Petitioner.  After a series of conversations, the topic of Petitioner's offense was raised.  Holman remembered the case and that he was in the area of the morning of Miller's murder.  Holman was visiting a lady friend of his who lived on the corner of 15th and Stuart Street.  While knocking on her front door around 2 or 3 a.m.,

Holman was passed by a blackish, gray colored old car with tinted windows. The car stopped briefly, then traveled down the block past Brown Street toward South Grand Avenue East and eventually pulled over. Two men wearing ski masks and carrying guns exited the car. The men ran toward 15th and Brown Street. Holman's friend did not answer the door, so Holman returned to his vehicle and drove away. Holman stated that when he told Harris about the incident in October 2011, Harris asked him to provide him with an affidavit. Holman refused because he was close to Miller's cousin, Cassandra Quinn, and did not want to get involved. Holman stated, however, that he was now willing to be called as a witness in any future proceedings and provide testimony on Petitioner's behalf.

On July 10, 2013, the trial court found that the "new evidence" was not new because petitioner had previously told police that he observed the two men, so there was no new information that would support Petitioner's claim. Mot. to Dismiss, Exhibit O (d/e 8-4, p. 27). The court also found that no cause had been established for failing to bring the claims and that Petitioner had not shown the necessary prejudice to allow a successive petition to be filed. Petitioner asserts in his Motion for Stay that this matter is currently

on appeal to the Illinois Appellate Court, Fourth District.  A review of the Sangamon County Circuit Clerk on-line records confirms this.

G.    On January 27, 2014, Petitioner Files His Petition Pursuant to 28 U.S.C. § 2254

On January 27, 2014, Petitioner filed his Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (d/e 1) which is at issue herein.  Petitioner raises the following grounds for relief:

Claim 1: Petitioner was denied the effective assistance of counsel because counsel failed to investigate witnesses Ronald McClain and Jarrod Hammonds but counseled Petitioner to plead guilty.

Claim 2: Petitioner's right to due process and equal protection under the law was violated when he was arrested without probable cause.  Petitioner asserts the detective included in the affidavit in support of the warrant certain false information, including that Laquana Miller claimed Petitioner removed Miller from his home at gunpoint and that Hammonds claimed that Petitioner

murdered Miller, when the detective knew that information was false.

Claim 3:  Petitioner's due process rights were violated when the State withheld exculpatory evidence that Hammonds did not state that he witnessed the murder, intentionally advanced a manipulated account of Hammonds' statement, and intentionally withheld that Hammonds' guardian was present in the interview with the state agents.

Claim 4:  Petitioner's guilty plea was not knowingly and voluntarily made in light of the newly discovered affidavits of McClain and Hammonds.  Petitioner also asserts that Holman's affidavit, along with McClain and Hammonds' affidavits, demonstrate Petitioner is actually innocent of the crime.

Claim 5:  Petitioner's due process and equal protection rights were violated where the transcript of the guilty plea hearing demonstrates that Petitioner's plea was not knowingly and voluntarily made because Petitioner was

being subtly coerced by detectives through Petitioner's

attorney.

Petitioner supported his Petition with the October 24, 2012

Holman affidavit and a September 28, 2013 Holman affidavit

in which Holman states, in addition to the fact that he saw two

armed men in ski masks the morning of Miller's murder, that

he also heard gun shots.  See Petition (d/e 1).

On May 1, 2014, Respondent filed a motion to dismiss

asserting that the petition is untimely (d/e 8).  Petitioner has

filed a response, as well as two motions to stay.  See d/e 12,

11, 15.

## II. ANALYSIS

## A.    The Court Denies Petitioner's Motions for a Stay

Petitioner has filed two Motions for a Stay.  See d/e 11,

15.  Petitioner asks for a stay of these proceedings to complete

his available state court remedies pertaining to his claim that

Holman's affidavit demonstrates he is actually innocent.  The

denial of Petitioner's December 2012 Motion for Leave to File a

Successive Post-Conviction Petition is currently on appeal.

Petitioner also asserts that he has a pending matter regarding a request under the Freedom of Information Act, 5 ILCS 140/3. Petitioner believes the documents he seeks under the Freedom of Information Act, which include State Police investigative reports, might demonstrate a pattern of police misconduct in presenting "arrest warrant complaints". Mot. to Stay (d/e 11, p. 4). Petitioner claims that such evidence would support Petitioner's Claim 2 (that the detectives included false information in the affidavit in support of the warrant).

When a petitioner files a petition that contains both exhausted and unexhausted claims, a stay and abeyance is appropriate only where the district court determines there was good cause for the petitioner's failure to exhaust his state court remedies, the unexhausted claims are potentially meritorious, and the petitioner did not engage in "intentionally dilatory litigation tactics." Rhines v. Weber, 544 U.S. 269, 277-78 (2005). As will be discussed below, Petitioner's actual innocence claim pertaining to Holman's affidavit is not potentially meritorious. Therefore, the Court denies Petitioner's Motions to Stay.

**B.    The Petition is Untimely, and No Exceptions to Timeliness Apply**

The Antiterrorism and Effective Death Penalty Act of 1996 imposes a one-year limitation period for the filing of § 2254 petitions.  28 U.S.C. § 2244(d)(1).  Respondent argues that Petitioner's Petition, filed nearly 15 years after his conviction, is untimely.

The Seventh Circuit has not yet decided whether timeliness should be evaluated on a claim-by-claim basis or by considering the petition in its entirety.  Taylor v. Michael, 724 F.3d 806, 819 n. 3 (7th Cir. 2013) (noting the issue but finding "it is not necessary to resolve the question" in that case), cert. denied 134 S. Ct. 926 (2014).  However, the Circuits that have considered the issue have held that timeliness must be considered on a claim-by-claim basis. See Zack v. Tucker, 704 F.3d 917, 924-25 (11th Cir. 2013) (examining Supreme Court and other Circuit decisions relevant to the issue); Mardesich v. Cate, 668 F. 3d 1164, 1171 (9th Cir. 2012) (noting that considering the timeliness of the petition in its entirety means that the statute of limitation would never run on any claim so long as there is a possibility of a timely challenge for one claim);

<u>Fielder v. Varner</u>, 379 F.3d 113, 118 (3rd Cir. 2004) (timeliness determined on a claim-by-claim basis); <u>Bachman v. Bagley</u>, 487 F. 3d 979, 984 (6th Cir. 2007) (same); <u>Predergast v. Clements</u>, 699 F.3d 1182, 1187 (10th Cir. 2012) (same). Therefore, this Court will examine the timeliness issue for each claim raised in the Petition.

Respondent argues that the Petition is untimely under the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1) and should be dismissed. Section 2244(d)(1) provides as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme

> Court, if the right has been newly
> recognized by the Supreme Court
> and made retroactively applicable to
> cases on collateral review; or
>
> (D) the date on which the factual
> predicate of the claim or claims
> presented could have been
> discovered through the exercise of
> due diligence.

Section 2244(d)(2) further provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. §2244(d)(2).

Petitioner does not argue that the State created an impediment to filing (28 U.S.C. § 2244(d)(1)(B)) or that the Supreme Court has recognized a right and made that right retroactively applicable to cases on collateral review (28 U.S.C. § 2244(d)(1)(C)).  Therefore, the Court will only address the calculation of the one-year period under §2244(d)(1)(A) and (d)(1)(D).

1.   The Petition is Untimely Under § 2244(d)(1)(A)

Under § 2244(d)(1)(A), the relevant date for starting the limitations period for filing the federal habeas petition is the date on

which the Petitioner's conviction became final by the conclusion of direct review or the expiration of the time for seeking such review. Because Petitioner did not file a direct appeal, his conviction became final when the time for seeking direct review expired.

Petitioner was sentenced on April 12, 1999. Pursuant to Illinois Supreme Court Rule 604(d), a defendant who pleads guilty may not appeal unless the defendant files a motion to withdraw the guilty plea within 30 days after the sentence is imposed. Ill. S. Ct. R. 604(d). Petitioner neither filed a motion to withdraw his guilty plea nor a notice of appeal. Therefore, the time for seeking direct review expired on May 12, 1999 – 30 days after the trial court sentenced Petitioner. See Page v. Anglin, No. 13 C 4298, 2013 WL 6050621, at *2 (N.D. Ill. Nov. 15, 2013) (holding that the petitioner had 30 days from the date of sentencing to take the steps necessary under Illinois Supreme Court Rule 604(d) to file an appeal; his conviction became final for purposes of § 2244(d)(1)(A) when those 30 days expired).

Because the time for seeking direct review expired on May 12, 1999, Petitioner had until May 12, 2000 to file his federal habeas

petition, unless the time was tolled by a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim. 28 U.S.C. § 2244(d)(2).

Petitioner did not file a state post-conviction petition until April 8, 2002, well after the expiration of the one-year period calculated under § 2244(d)(1)(A). State post-conviction proceedings that are filed after expiration of the one-year statute of limitations do not restart the one-year period. De Jesus v. Acevedo, 567 F.3d 941, 943 (7th Cir. 2009) ("It follows that a state proceeding that does not begin until the federal year has expired is irrelevant"); Graham v. Borgen, 483 F. 3d 475, 483 (7th Cir. 2007) (holding that a petition for collateral review filed after the federal habeas statute of limitations expired does not toll the one-year statute of limitations). Therefore, under § 2244(d)(1)(A), all of the claims are untimely.

2.    The Petition is Untimely Under § 2244(d)(1)(D)

Respondent also argues that Petitioner is not entitled to invoke § 2244(d)(1)(D), which starts the limitations period on "the date on which the factual predicate of the claim or claims presented could

have been discovered through the exercise of due diligence." 28
U.S.C. § 2244(d)(2). The one-year time period begins to run under
§2244(d)(1)(D) when the evidence could have been discovered
through diligent inquiry, not when it was actually discovered or its
significance realized. <u>Owens v. Boyd</u>, 235 F.3d 356, 359 (7th Cir.
2001); <u>see</u> <u>also</u> <u>Deloney v. McCann</u>, 229 F. App'x 419, 422 (7th Cir.
2007) ("The statute of limitations began running when Deloney
became aware of the facts giving rise to his claim, not when he
obtained the evidence to support it").

Petitioner's first four claims center primarily on the affidavits
of Hammonds and McClain as the factual predicate of the claim.
Petitioner also relies on the affidavit of Kevin Holman, but that
claim is brought to support an actual-innocence claim, which the
Court will address separately. The Court does not evaluate Claim 5
under § 2244(d)(1)(D) because the factual predicate of that claim—
that his plea was "subtly coerced"—was known to Petitioner at least
when he pleaded guilty, as he cites to the transcript of the plea
hearing in support of this claim.

Petitioner argues that his counsel was ineffective for failing to
interview McClain and Hammonds (Claim 1), that the police reports

and Hammonds' statement demonstrate that Petitioner was arrested without probable cause (Claim 2), that the prosecution withheld evidence showing that Hammonds claimed he had not seen the murder and the police misrepresented Hammonds' account at the plea hearing (Claim 3), and Petitioner's plea was not knowing and voluntary in light of the affidavits of Hammonds and McClain (Claim 4). Petitioner asserts that the affidavits are newly discovered evidence.

However, Petitioner knew the factual predicate of the claims—the alleged falsity of Hammonds' and McClain's statements to the detectives—long before he obtained their affidavits. See Tate v. Pierson, 177 F. Supp. 2d 792, 800 (2001) (the actual or putative knowledge of the pertinent facts starts the one-year period of limitation under § 2244(d)(1)(D), not the collection of the evidence), aff'd 52 F. App'x 302 (7th Cir. 2002); Flanagan v. Johnson, 154 F.3d 196, 199 (5th Cir. 1998) ("Section 2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might, by negative implication, support his claim"). Specifically, Petitioner asserts in his § 2254 petition that he "stressed to his attorney that

it was important that he speak with Hammonds, Davis and McClain because he didn't understand why they implicated him in this offense." Petition, p. 5 (d/e 1) (also noting that Petitioner contacted McClain and Hammonds and told them to contact his attorney). Petitioner also stated in one of his state court pleadings he had heard rumors in the Sangamon County Jail (where Petitioner was held prior to his conviction) that McClain was lied to and threatened. Mot. to Dismiss, Exhibit H (d/e 8-2, p. 21). Therefore, Petitioner knew the factual predicate of his claims before he even pleaded guilty. Moreover, Petitioner obtained the information from McClain at least in October 2002, when he obtained the first affidavit from McClain, and in 2004, when he contacted Hammonds and learned that Hammonds purportedly never told the detectives that Petitioner shot Miller.

Nonetheless, even using the latest date that Petitioner obtained an affidavit from either McClain or Hammonds[5]—April

---

[5] Although Petitioner also obtained an affidavit from Arthur McCain on May 17, 2010, which asserted that Arthur was present when Hammonds spoke to the police and that he never heard Hammonds say that Petitioner murdered Miller, this only supported Hammonds' story and is not the factual predicate for Petitioner's claims. See, e.g., Flannigan, 154 F. 3d at 199 (finding that the petitioner's lawyer's affidavit did not form the factual predicate of the claim

2009—Petitioner's filing is still untimely. Petitioner waited over four years—until January 2014—to file his § 2254 petition.

Neither the Motion for Leave to File (Third) Successive Petition (filed May 29, 2008 and denied September 22, 2010) nor the Petition for Relief from Judgment Pursuant to § 2-1401 (filed August 5, 2011 and denied June 8, 2011) tolled the one-year period of limitation. As noted above, § 2244(d)(2) provides that the limitation period is tolled during the "time during which a properly filed application for State post-conviction review or other collateral review . . . is pending." An application is properly filed when "its delivery and acceptance are in compliance with the applicable laws and rules governing filing." Artuz v. Bennett, 531 U.S. 4, 8 (2000); see also Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005).

Illinois law, after January 1, 2004, specifically required a petitioner to obtain leave to file a successive state court post-conviction petition. 725 ILCS 5/122-1(f). Therefore, a successive state court post-conviction petition is only "properly filed" if the state court granted the petitioner permission to file it. Martinez v.

---

because the factual predicate was that the petitioner was called to testify and did not know he had the right to refuse).

<u>Jones</u>, 556 F.3d 637, 639 (7th Cir. 2009) (holding that "the period during which a request to file a successive petition is pending in Illinois state court does not toll the statute of limitations on actions under § 2254 unless permission is granted").  Here, Petitioner was not given permission to file his successive state court post-conviction petition.  Therefore, the  Motion for Leave to File Successive Petition filed May 29, 2008 and denied September 22, 2010 did not toll the one-year period of limitation for filing the §2254 petition in federal court.

Petitioner's § 2-1401 petition was also denied as untimely by the state trial court.  A petition that is denied as untimely is not "properly filed" within the meaning of § 2244(d)(2).  <u>See</u> <u>Pace</u>, 544 U.S. at 417 (holding that a state post-conviction petition that the state court rejected as untimely is not properly filed within the meaning of § 2244(d)(2)); <u>Smith v. Rednour</u>, No. 10 C 2767, 2010 WL 4363380, at *4 (N.D. Ill. Oct. 26, 2010) (finding that § 2-1401 petition that was dismissed as untimely was not properly filed for purposes of statutory tolling).  This is the case even if the trial court dismissed the petition as untimely but also addressed the merits.  <u>Carey v. Saffold</u>,

122 S. Ct. 2134, 2141 (2002) (holding that a clear ruling from a state court that the filing was untimely "would be the end of the matter, regardless of whether it also addressed the merits of the claim"); Brooks v. Walls, 301 F. 3d 839, 843 (7th Cir. 2002) (holding that the state court's determination that the petition was untimely meant that it was not properly filed, even though the state court also made a finding on the merits). Therefore, the Petition for Relief From Judgment Pursuant to § 2-1401 filed August 5, 2011 and denied June 8, 2011 did not toll the one-year period of limitation for filing the § 2254 petition in federal court. Consequently, Claims 1 through 4 are also untimely under § 2244(d)(1)(D).

3.   Equitable Tolling Does Not Apply

The statutory limitation contained in §2244(d) is subject to equitable tolling in appropriate cases. Holland v. Florida, 560 U.S. 631, 645 (2010). Equitable tolling saves an otherwise untimely habeas petition if the petitioner can establish: (1) he has been pursuing his rights diligently; and (2) some extraordinary circumstance prevented him from filing his petition on time. Pace, 544 U.S. at 418. However, "[e]quitable tolling is rarely granted." Tucker v. Kingston, 538 F.3d 732, 734 (7th Cir. 2008).

In this case, Petitioner has not shown that he pursued his rights diligently and that some extraordinary circumstance prevented him from filing his federal habeas petition on time. Petitioner argues that he diligently tried to obtain affidavits from Hammonds and McClain over the years but they were incarcerated, unstable, and refused to provide affidavits.  However, even taking into account those difficulties, Petitioner obtained affidavits from McClain and Hammonds as early as 2002 and as late as 2009.  Yet, Petitioner failed to file a federal habeas until January 27, 2014.

Even if Petitioner was trying to exhaust state remedies during that time, he could have filed a "protective" habeas petition in federal court.  See Pace, 544 U.S. at 416 (a petitioner can avoid a potential federal habeas time bar by filing a protective habeas petition and asking the federal court to "stay and abey the federal habeas proceedings until state remedies are exhausted").  The Seventh Circuit has recommended that practice since as early as 2001.  See Johnson v. McCaughtry, 265 F.3d 559, 565 (7th Cir. 2001), citing Pizzo v.  Bekin Van Lines, Co., 258 F.3d 629, 635 (7th Cir. 2001).

Petitioner also suggests that he had difficulty litigating under the prison system. However, that does not constitute "extraordinary circumstances." See Janssen v. Pugh, 394 F. App'x 305 (7th Cir. 2010) (finding that the petitioner's claims that he was not "well-educated in the law" and had to navigate "burdensome prison policies" did not excuse his lengthy delay in filing is § 2254 petition); Tate, 177 F. Supp. 2d at 800 (holding that "[p]roceeding pro se with limited legal skills and limited access to legal materials is not an exceptional circumstance"); see also Johnson v. McBride, 381 F.3d587, 589 (7th Cir. 2004) (finding that equitable tolling did not apply; no one interfered with the petitioner's ability to commence a collateral attack, or to pursue collateral relief in a timely fashion). Petitioner has not demonstrated that he is entitled to equitable tolling.

4.    Petitioner Has Not Shown Actual Innocence Such that the Court Should Reach the Constitutional Claims

Petitioner also argues that the Court should reach his claims because he is actually innocent. To the extent Petitioner attempts to bring a free-standing actual innocence claim, the Court will not address such a claim because the Supreme Court has not yet

determined whether such a claim may be brought.  See Herrera v. Collins, 506 U.S. 390, 404 (1993) (holding that "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits"); McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"); see also Newirk v. Anglin, No. 13 C 9114, 2014 WL 2110224 at *3 (N.D. Ill. May 20, 2014) ("until the Supreme Court unequivocally decides that actual innocence claims are freestanding constitutional claims, any such claim is not cognizable on habeas review").

Nonetheless, a showing of actual innocence can overcome the expiration of the statute of limitations and allow a petitioner to bring constitutional claims that would otherwise be barred. McQuiggin,133 S. Ct. at 1928 (holding that "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief").  A petitioner must support claim "with new reliable evidence—whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence –that was not presented at trial." <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995) (noting that because such evidence is rarely available, actual-innocence claims are rarely successful). The evidence must be "documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." <u>Hayes v. Battaglia</u>, 403 F.3d 935, 938 (7th Cir. 2005).

To make the requisite showing, a petitioner must demonstrate that, more likely than not, in light of the new evidence, any reasonable juror would have reasonable doubt. <u>House v. Bell</u>, 547 U.S. 518, 538 (2006) (also noting that "absolute certainty about the petitioner's guilt or innocence" is not required). In assessing a petitioner's showing, the district court looks at all of the evidence, both old and new. <u>Id.</u>

This case is slightly different than the usual case because Petitioner pleaded guilty and did not go to trial. Pleading guilty is not an absolute bar to an actual innocence claim. <u>Bousley v. United States</u>, 523 U.S. 614, 623-24 (1998). However, the fact of the plea is evidence that the defendant committed the crimes to

which he pleaded.  <u>Ryburn v. Ramos</u>, Case No. 09-cv-1176, 2014 WL 51880, at *4 (C.D. Ill. Jan. 7, 2014) (finding "the first glaring impediment to Petitioner's actual innocence claim is the fact that he pleaded guilty to the crime for which he is incarcerated");  <u>Ryburn v. Ramos</u>, Case No. 09-cv-1176, 2014 WL 804471, * 3 (C.D. Ill. Feb. 28, 2014) (noting, on a motion to amend the earlier decision, that the petitioner could not make a showing of actual innocence where the petitioner's plea was intelligent and where the petitioner apologized for his actions  at sentencing).

In this case, Petitioner relies on the affidavits of McClain, Hammond, and Holman to support his actual-innocence claim. McClain, in his affidavit, recants his statement to the police that he witnessed Petitioner kill Miller.  McClain states he did not witness the murder as he had been dropped off earlier in the evening. Hammonds states that he never told the police that he witnessed the murder and, in fact, did not witness the murder.  Holman states that on the night of the murder, he saw two armed men with ski masks and heard gun shots in the area where Miller was shot.

Even if the Court accepted that this evidence was "new evidence," meaning that it was not available when Petitioner

pleaded guilty, the evidence does not support a credible claim of actual innocence. <u>Gomez v. Jaimet</u>, 350 F.3d 673, 679 (7th Cir.2003) (holding that under <u>Schlup</u>, the evidence does not have to be newly discovered but only needs to be reliable evidence that was not presented at trial). That is, the evidence does not establish that it is more likely than not that any reasonable juror would have reasonable doubt. <u>House</u>, 547 U.S. at 538; <u>McKinley v. Harrington</u>, No. 11 C 04190, 2014 WL 1292798 at *11 (N.D. Ill. March 31, 2014) (taking into account the old and new evidence, the court found no reasonable probability that no reasonable jurors would have found him guilty).

McClain and Hammonds both claim that they did not witness the murder. Similarly, Holman did not witness the shooting. Holman observed two armed and masked men and heard gunshots. While Holman's statement is in line with what Petitioner told the police, Holman's affidavit is ambiguous and does not rule out Petitioner's involvement. <u>See e.g.</u> <u>Tate</u>, 177 F. Supp. 2d at 802 (finding affidavit ambiguous where the affiant stated he heard shots but did not witness the shooting itself; therefore, he could not rule out the defendant's involvement).

The State had substantial evidence in support of the factual basis for Petitioner's plea. Davis gave a statement to police that Petitioner shot Miller, disposed of the gun, and instructed Davis and McClain to burn the vehicle. Petitioner admitted being with Davis on the night in question, and the testimony of one eyewitness is sufficient for a conviction. Woods v. Schwartz, 589 F.3d 368, 377 (2009) (finding that the petitioner's affidavits did not establish that no reasonable factfinder would have found the petitioner not guilty of the underlying offense in light of the testimony of the eyewitness); Hayes, 403 F. 3d at 938 (noting "it is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar"); Smith v. McKee, 598 F.3d 374, 388 (7th Cir. 2010) (finding that the petitioner's submission of two affidavits from witnesses who did not testify at trial did not "sufficiently counter the state's two eye witness identifications" and evidence of the petitioner's self-inculpating statement).

The State also had McClain and Hammonds original statements, which were consistent with Davis' statement. Even if McClain and Hammonds now testified in conformance with their affidavits, a jury would still hear them being impeached with their

earlier statements.  See Brown v. Superintendent, 996 F. Supp. 2d 704, 720 (N.D. Ind. 2014) (finding that a letter from a trial witness recanting his testimony did not "come close to proving" that the petitioner was actually innocent because the jury would still have heard the other witnesses who testified that they saw the petitioner with a gun and would have heard the recanting witness's original statement).

Also, a jury would hear evidence that Petitioner instructed Davis and McClain to burn the vehicle, which they did.  Two random men in ski masks who had not been in the vehicle would have little incentive to remove Miller's body from the vehicle and burn the vehicle.  Moreover, as noted, above, the court can consider that Petitioner pleaded guilty as an indication that he is not actually innocent.  Ryburn, 2014 WL 804471 at *4 (noting that the petitioner's pleading guilty "is certainly weighty evidence that he actually committed the crimes to which he pled").

The Court finds that Petitioner has failed to point to new, reliable evidence that would make it more likely than not that no juror would find him guilty.  Therefore, the Petition is denied as untimely.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Proceedings, this Court denies a certificate of appealability in this case. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," a certificate of appealability should issue only when the prisoner shows both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Jimenez v. Quarterman, 555 U.S. 113, 118 n. 3 (2009). This Court concludes that jurists of reason would not find it debatable whether Petitioner's Petition should be dismissed as untimely.

## IV. CONCLUSION

For the reasons stated, Respondent Cecil Polley's Motion to Dismiss Petitioner's Petition for a Writ of Habeas Corpus as Untimely [8] is GRANTED and Petitioner James C. Harris' Motions for Stay [11], [15], are DENIED. Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State

Custody [1] is DISMISSED with prejudice as untimely.  A Certificate of Appealabilty is DENIED.  CASE CLOSED.

ENTER: October 7, 2014

FOR THE COURT:

                       s/Sue E Myerscough
                       SUE E. MYERSCOUGH
                       UNITED STATES DISTRICT JUDGE